# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **KROGER SPECIALTY PHARMACY FL 2, LLC, and KROGER PRESCRIPTION PLANS, INC.,** | Case No. 1:23-cv-00816 |
| Plaintiffs, | Judge _____ |
| v. | **COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF AND DAMAGES** |
| **SCARLETTE BESSEN,** | |
| Defendant. | |

Plaintiffs Kroger Specialty Pharmacy FL 2, LLC and Kroger Prescription Plans, Inc. (collectively "Kroger" or "Plaintiffs"), for their Complaint for Temporary Restraining Order, Other Injunctive Relief and Damages against Defendant Scarlette Bessen ("Bessen") ("Defendant"), states as follows:

## NATURE OF THE CASE

1. Bessen is a former implementation manager for Kroger. Her employment agreement expressly restricts her from, among other things, using Kroger's confidential information to compete unfairly.

2. In October 2023, Bessen resigned her employment with Kroger.

3. Shortly before her resignation, Bessen emailed confidential Kroger information to her personal email address. This conduct was in breach of her contractual and other legal obligations.

4. If Bessen is permitted to use Kroger's confidential information for her own benefit, Kroger will be irreparably harmed. Only injunctive relief will protect Kroger against irreparable harm.

5. Moreover, Bessen's employment agreement restricting her from using Kroger's confidential information is reasonable and must be enforced.

## PARTIES

6. Kroger Specialty Pharmacy FL 2, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 3200 Lake Emma Road, Suite 1000, Lake Mary, Florida 32746. Kroger is also registered to and does business in the state of Ohio. Kroger has the following members: Kroger Specialty Pharmacy Holdings 3, LLC. Kroger Specialty Pharmacy Holdings 3, LLC is a limited liability company with the following member: Kroger Specialty Pharmacy Holdings 2, Inc. Kroger Specialty Pharmacy Holdings 2, Inc. was organized in the State of Delaware, with its principal place of business at 3200 Lake Emma Road, Suite 1000, Lake Mary, FL 32746. The sole shareholder of Kroger Specialty Pharmacy Holdings 2, Inc. is Kroger Specialty Pharmacy Holdings I, Inc.

7. Kroger Prescription Plans, Inc. was organized in the State of Ohio, with its principal place of business located in Hamilton County, Ohio. It is a direct, wholly-owned subsidiary of The Kroger Company.

8. Bessen is a former Implementation Manager for Kroger. Upon information and belief, she currently resides and may be served at 4822 Hemlock Way, Nampa, ID 83687.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy is over $75,000, exclusive of interests and costs.

10. The Court has personal jurisdiction over Bessen because, without limitation, she had frequent contact with Kroger and its employees in Ohio, including regular communications with such individuals who were located in Ohio.

11. Venue is proper pursuant to 28 U.S.C. § 1391(a) because Defendant is subject to personal jurisdiction in this District.

## FACTS

### A. Kroger's Business

12. Kroger is a clinical specialty pharmacy that is dedicated to serving patients with chronic illnesses requiring complex care. Kroger serves its patients by offering comprehensive therapy management programs as well as injectable and oral pharmaceutical treatments for a wide variety of chronic illnesses and conditions. These programs and treatments provide direct value not only to the patients themselves, but to the healthcare organizations who refer such patients.

### B. Bessen joins Kroger and signs an agreement.

13. Bessen is a former employee of Kroger.

14. Bessen began working for Kroger in or about March 2018 as an Account Manager.

15. In or about April 2019, Bessen was promoted to an Account Executive position. In this position, Bessen was in daily contact with numerous coworkers located in Cincinnati, Ohio. These daily communications included emails, phone calls, and video meetings. In particular, Bessen joined a virtual meeting every week attended by numerous Cincinnati-based coworkers. She also regularly attended other weekly and monthly meetings with Cincinnati coworkers.

16. In August 2019, Bessen executed a Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the "Agreement"). (*See* Exhibit A attached)

17. In or about August 2019, Bessen was further promoted to an Implementation Manager role. As part of this promotion, her annualized compensation was increased to $95,000.

18. As an Implementation Manager, Bessen reported to a Cincinnati-based Senior Vice President of Kroger Prescription Plans. In this new role, Bessen continued to attend numerous weekly and monthly virtual meetings with Cincinnati colleagues, including a weekly 1:1 call with her boss.

19. In June of 2020, Bessen began reporting to a different Kroger Prescription Plans employee, who was the Senior Director of Clinical Services & Operations and who is based in Columbus, Ohio. In this role, Bessen also worked on a COVID Care Plus project, which involved extremely frequent communications with Cincinnati-based coworkers and other Kroger contacts. Further, Bessen met via virtual call at least twice per month with her then boss from February 2021 until Bessen's resignation. Bessen's near daily interactions with Cincinnati-based coworkers continued until Bessen's resignation.

20. The Agreement, which Bessen had already signed in August 2019, was a prerequisite and consideration for Bessen's acceptance and assumption of the implementation role.

21. By signing the Agreement, Bessen agreed to maintain the secrecy of Kroger's confidential business information by complying with the following confidentiality and nondisclosure provision:

> **Confidentiality and Non-Disclosure**. Employee agrees not to use, reproduce, disclose, or make available the Company's Confidential Information for his or her own benefit or the benefit of any person or entity other than the Company, except as reasonably necessary for the performance of the Employee's duties as an employee of the Company, without prior written consent of the Company, unless and to the extent that any Confidential Information (i) becomes generally known to and available for use by the public other than as a result of the Employee's improper acts or omissions to act or (ii) is required to be disclosed pursuant to any applicable law, regulatory action or court order; provided, however, that the Employee must give the Company prompt written notice of any such legal requirement, disclose no more

information than is so required, and cooperate fully with all efforts by the Company to obtain a protective order or similar confidentiality treatment for such information. Upon the termination of the Employee's employment with the Company, the Employee agrees to deliver to the Company, upon request, all memoranda, notes, plans, records, reports and other documents (including copies thereof and electronic media) relating to the business of the Company (including, without limitation, all Confidential Information) that the Employee may then possess or have under the Employee's control, other than such documents as are generally or publicly known (provided, that such documents are not known as a result of the Employee's breach or actions in violation of this Agreement); and at any time thereafter, if any such materials are brought to the Employee's attention or the Employee discovers them in the Employee's possession, the Employee shall deliver such materials to the Company immediately upon such notice or discovery. Employee also agrees to indemnify and hold the Company harmless for any loss, claim or damages, including attorney's fees or costs, arising out of or related to the unauthorized disclosure or use of the Confidential Information by Employee.

(Agreement, Paragraph 2(a)) (Exhibit A).

22. The term "Confidential Information" in the Agreement includes six categories of business information and is defined at Paragraph 1. (Agreement, Paragraph 1) (Exhibit A).

23. Paragraph 3 of the Agreement states as follows:

**Agreement Necessary and Reasonable/Disclosure of Agreement**. Employee acknowledges that the terms of this Agreement are necessary to protect the Company's legitimate and protectable interests, and are reasonable to Employee. The parties specifically agree that the Company has acquired and will maintain its customer relationships at great expense and that the Company's customer information is confidential and proprietary, such that the Company derives an economic benefit from maintaining the secrecy of such information, which qualifies for trade secret status under applicable law. Employee acknowledges that by virtue of his or her employment with the Company, he or she will enjoy a position of special trust and confidence with the Company. Employee represents that in the event of termination of employment with the Company, irrespective of the manner or cause, his or her experience and capabilities are such that he or she can obtain employment in business in other lines and of a different nature, and that the enforcement of the covenants set forth in this Agreement will not prevent Employee from earning a livelihood for himself or herself and any dependents or otherwise impose undue hardship on Employee. During the Restricted Period, Employee agrees to provide a copy of this Agreement to any potential employer following his or her employment with the Company. Employee further agrees that the Company may disclose this Agreement to any employer or potential employer of Employee during the Restricted Period.

(Agreement, Paragraph 3) (Exhibit A).

24. The Agreement contains a tolling provision which states that "[i]n the event Employee breaches a covenant in Paragraph 2, the Restricted Period will be extended by the amount of time Employee was in violation of the covenant." (Agreement, Paragraph 4) (Exhibit A).

25. The Agreement contains a Florida choice of law provision. (Agreement, Paragraph 5) (Exhibit A).

      C.      **Bessen's employment with Kroger.**

26. As an Implementation Manager, Bessen's primary job responsibilities included implementing new business products and services into the Kroger Prescription Plans platform, ensuring customer satisfaction with these business products and services, and developing and building customer relationships. Bessen used Kroger's Confidential Information (also as defined in the Agreement) to communicate with Kroger customers about the systems and processes she was responsible for implementing.

27. At the time of her resignation from Kroger, Bessen's total annual compensation was in excess of $105,000.

      D.      **Kroger protects its confidential information and trade secrets.**

28. During Bessen's employment with Kroger, she had access to and used Kroger's sensitive Confidential Information (as defined in the Agreement) and trade secrets to perform her job responsibilities as an Implementation Manager.

29. Kroger takes active measures to protect the secrecy of its Confidential Information and trade secrets, including but not limited to: requiring employees to sign agreements containing confidentiality and other provisions; restricting user access to Confidential Information and trade secrets; and segmenting employee access to certain types of Confidential Information and trade

secrets in Kroger's computer system. Kroger also restricts access to computer devices by user name and password and requires a VPN in order to have full access to its system remotely. Only certain individuals like Bessen, when she was employed by Kroger, are given access to Kroger's server and records.

30. Kroger takes such precautions to maintain the secrecy of its Confidential Information and trade secrets because it would suffer extreme and unfair competitive harm if such Confidential Information and trade secrets were to be obtained by, or used on behalf of, a competitor.

### E. **Bessen voluntarily resigns and sends Kroger's confidential information and trade secrets to her personal email address.**

31. Bessen voluntarily resigned from Kroger effective October 26, 2023.

32. Prior to Bessen's departure, Bessen was asked where she would be working after she left Kroger. Bessen responded that she planned to become a project manager for a pharmacy benefit management company. Bessen declined to identify any particular organization. Upon information and belief, Bessen relayed this same information to multiple coworkers.

33. Shortly before Bessen's resignation, Bessen emailed confidential Kroger information to her personal email address.

34. Specifically, Bessen emailed at least **86** confidential KROGER documents to her personal email address (scarletteaz@gmail.com), including a spreadsheet listing over **400** Kroger customer names and contact information, among numerous other customer lists and Kroger work product. A list/description of some of the documents that Bessen sent to her personal email address is attached as Exhibit B.

35. Bessen's conduct is in violation of the Agreement because Bessen has taken/retained Kroger confidential information available for her use after her Kroger employment

7

ended and has used it or threatens to use it for her own benefit and potentially the benefit of other individuals or entities.

36. On November 14, 2023, Kroger, through counsel, sent a letter to Bessen about her contractual and other legal obligations. *See* Exhibit C attached. The letter requested Bessen to return all Kroger information that she possessed.

37. On or about December 4, 2023, Bessen sent an SD Card to Kroger's counsel in this matter. The card contained some, but not all, of the confidential information Bessen sent to her personal email address. The SD Card did not contain the spreadsheet listing over 400 customer names and contact information.

F. **The Irreparable Harm to Kroger.**

38. Bessen's forwarding of Kroger confidential documents to her personal email address is in direct violation of the Agreement and has irreparably harmed Kroger and continues to threaten to do so.

39. Upon information and belief, Bessen is using or has used Kroger's Confidential Information and trade secrets she retained to help herself and others compete unfairly with Kroger.

40. Bessen's wrongful activities in violation of the Agreement and applicable law have caused and will continue to cause Kroger to suffer irreparable harm.

41. Unless Bessen is enjoined from continuing to exploit Kroger's Confidential Information and trade secrets and violating her legal obligations to Kroger, Kroger will lose the benefit of: (a) its relationships with its customers, referral sources and/or patients and (b) its Confidential Information and trade secrets that it has developed.

42. Damages caused by Bessen's actions, as described herein, are extremely difficult to ascertain in that it is impossible to determine the full impact of Bessen's actions.

43. Kroger does not have an adequate remedy at law for Bessen's continuing wrongful conduct.

## **COUNT I- BREACH OF CONTRACT**

44. Kroger incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten.

45. The Agreement is a valid and enforceable contract that imposes certain restrictions on Bessen.

46. Pursuant to the Agreement, Bessen agreed not to use or disclose Kroger's Confidential Information or trade secrets following the end of her employment.

47. Kroger has legitimate business interests in protecting its Confidential Information and trade secrets.

48. Bessen has breached her obligations in the Agreement by taking/retaining confidential Kroger documents. Upon information and belief, Bessen is using confidential Kroger documents or threatens to use such documents.

49. Kroger has suffered damages as a result of Bessen's breaches of contract. Such damages are, however, insufficient to provide a full and complete remedy to Kroger.

50. Unless restrained, enjoined, and ordered to specifically abide by the post-termination obligations in the Agreement by order of this Court, Bessen will persist in her breaches of contract, thereby causing immediate, irreparable damage to Kroger.

51. Kroger has no adequate remedy at law, as the full value of the revenue and profit presently being lost, or to be lost, due to Bessen's breaches of contract is and will be difficult, if not impossible, to ascertain.

52. Pursuant to Paragraph 4 of the Agreement, Bessen agreed that "breach of this Agreement will result in irreparable and continuing damage to the Company for which money damages may not provide adequate relief, and that breach of any of the terms of this Agreement by Employee or Employee's representatives or persons acting in concert with Employee will entitle the Company to both preliminary and permanent injunctive relief in addition to money damages, insofar as they can be determined under the circumstances." *See* Exhibit A attached.

## COUNT II- MISAPPROPRIATION OF TRADE SECRETS

53. Kroger incorporates by reference the allegations contained in the preceding paragraphs as if fully rewritten.

54. Florida law, specifically Fla. Stat. Chapter 688, statutorily protects trade secrets from wrongful misappropriation. Among other information, Florida law protects "a formula, pattern, compilation, program, device, method, technique, or process." Kroger has invested significant resources in acquiring and developing its confidential information, including, without limitation, referral names and information, hundreds of customer names, and other customer information. Such information is not known outside of Kroger and Kroger takes significant steps to prevent disclosure of such information. Accordingly, such information is subject to trade secret protection under Florida law.

55. Ohio law, specifically O.R.C § 1333.61 *et seq.*, also statutorily protects trade secrets from wrongful misappropriation. Ohio law protects information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers that satisfies both of the following 1) it derives independent economic value, actual or

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and 2) it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Kroger has invested significant resources in acquiring and developing its confidential information, including, without limitation, referral names and information, hundreds of patient names, and other patient information. Such information is not known outside of Kroger and Kroger takes significant steps to prevent disclosure of such information. Accordingly, such information is also subject to trade secret protection under Ohio law.

56. Bessen possesses Kroger's confidential information and trade secret information.

57. Kroger takes reasonable steps to maintain confidentiality with respect to its trade secret material, including the information referenced above.

58. Bessen's continued possession of Kroger's work-related information constitutes actual and/or threatened trade secret misappropriation.

59. Kroger has suffered and will continue to suffer irreparable harm and the continued loss of business as a result of Bessen's actual, threatened, and/or inevitable misappropriation of Kroger's trade secrets.

60. Further, Kroger is entitled to an injunction that prohibits Bessen and all others acting in association with her, directly or indirectly, from retaining, using, or disclosing the trade secrets.

61. Kroger is entitled to recover its attorneys' fees due to Bessen's acts or threatened acts of misappropriation.

62. Because, upon information and belief, Bessen acted maliciously and willfully in misappropriating Kroger's trade secrets, Kroger is also entitled to recover punitive damages.

63. Kroger has no adequate remedy at law against Bessen's misconduct, in that the damages for such misconduct are difficult to ascertain completely and with precision. Unless Bessen is restrained and enjoined from further interference, Kroger will suffer irreparable harm in addition to economic harm.

### COUNT III – APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTIVE RELIEF

64. Kroger realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

65. Kroger will suffer irreparable harm for which no adequate remedy at law exists if Bessen is not enjoined from continuing her current course of action. Bessen appears intent on ignoring the Agreement and using Kroger's confidential information, in violation of Bessen's contractual obligations to Kroger and other applicable law.

66. If Bessen is allowed to continue to pursue her current course of action, Kroger will suffer irreparable harm and stands to lose: (1) the value of the confidential information and trade secrets that it has expended extensive time and money to develop; (2) goodwill and business from its clients and prospective clients; and (3) valuable business opportunities that it has expended extensive time and money to develop. These trade secrets, clients, and business opportunities are essential to Kroger's competitive advantage.

67. In addition to the loss of value to Kroger's confidential and proprietary information and trade secrets due to Bessen's improper actions, Kroger will be damaged through loss of revenue, loss of clients, impairment of future earning capacity, diminution in the value of its business, and/or loss of goodwill.

68. A temporary injunction is necessary to preserve Kroger's rights pending a trial on the merits of this action, and a permanent injunction is warranted by the facts of this case.

69. There is a substantial likelihood that Kroger will prevail on the merits. Bessen is misappropriating or threatening to misappropriate Kroger's Confidential Information and trade secrets which has caused or threatens to cause irreparable harm to Kroger. Plaintiffs are entitled to an injunction enjoining Bessen from further misappropriating its confidential information and from using the confidential information in her possession.

70. The threatened disclosure of confidential information and trade secrets, the threat of injury to Kroger's business and customer relations, and the threat of lost business opportunities outweighs any possible damage to Bessen. Bessen would lose nothing by such an injunction except that which she secured unlawfully.

71. The public interest is served by an injunction as it protects the substantial investment made by Kroger in developing its successful business.

## **REQUEST FOR RELIEF**

Plaintiffs Kroger Specialty Pharmacy FL 2, LLC and Kroger Prescription Plans, Inc. respectfully request judgment in their favor and against Defendant Bessen and further requests that the Court:

A. Grant the following injunctive relief to Plaintiffs:

1) Enter an Order temporarily, preliminarily and permanently enjoining Bessen from using or disclosing Plaintiffs' confidential information; and

2) Enter an Order temporarily, preliminarily and permanently enjoining Bessen's actual, threatened, and/or inevitable misappropriation of Plaintiffs' trade secrets in violation of applicable law.

13

B. Order Defendant Bessen to immediately return to Plaintiffs all of their property, confidential information, and trade secrets, whether in hard copy or electronic form, and to not retain this information for her own use or benefit.

C. Order Bessen to not destroy, erase, or otherwise make unavailable for further proceedings in this matter, any records, telephonic records, or documents (including data or information maintained in computer media) in Bessen's possession, custody, or control, or to which Bessen has access, including but not limited to, computers and/or data or server systems, which were obtained from or contain information derived from any of Plaintiffs' property, confidential information, or trade secrets, or which relate to any of the events alleged in the Complaint in this action.

D. Grant Plaintiffs immediate discovery and order that Bessen appear for deposition and produce any computers, or other electronic storage devices, upon which any of Plaintiffs' information obtained by Bessen is now or has in the past been stored or kept.

E. Award Plaintiffs compensatory damages arising out of Defendant's unlawful conduct.

F. Award Plaintiffs punitive damages, attorneys' fees, expenses, interest, and costs, pursuant to Fla. Stat. Chapter 688, Ohio Revised Code § 1333.61, *et seq*. and other statutory or common law,

G. Grant Plaintiffs such additional relief as is just and proper.

Respectfully submitted,

*/s/ Robert D. Shank*
Robert D. Shank (0069229)
Blythe McGregor (0101042)
JACKSON LEWIS P.C.

14

        201 E. Fifth Street, 26th Floor
        Cincinnati, OH  45202
        Telephone:  (513) 898-0050
        Facsimile:   (513) 898-0051
        robert.shank@jacksonlewis.com
        blythe.mcgregor@jacksonlewis.com

*Counsel for Plaintiffs*

4855-9205-8258, v. 1