UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KROGER SPECIALTY PHARMACY FL 2, LLC, *et al.*, | : | Case No. 1:23-cv-816 |
| *Plaintiffs*, | : | Judge Jeffery P. Hopkins |
| vs. | : | |
| SCARLETTE BESSEN, | : | |
| *Defendant*. | : | |

**OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss for Lack of Jurisdiction (the "Motion") (Doc. 15) under Fed. R. Civ. P. 12(b)(2) brought by Defendant, Scarlette Bessen. For the reasons set forth herein, Bessen's Motion is **DENIED.**

**I. BACKGROUND**

When resolving a 12(b)(2) motion solely on the written submissions, courts will not consider facts proffered by the defendant that conflict with those offered by the plaintiff. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Thus, the Court accepts all factual assertions made by Plaintiffs as true, and does not at this stage in the proceedings include any controverting assertions made by Bessen.

**A. Parties**

Plaintiff Kroger Specialty Pharmacy FL 2, LLC ("Kroger (FL)") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Lake Mary, Florida. Doc. 1, PageID 2. Kroger (FL) offers therapy management programs as well as pharmaceutical treatments for a variety of chronic illnesses and conditions. *Id.* at PageID 3.

Plaintiff Kroger Prescription Plans, Inc. ("Kroger (OH)") is organized in the State of Ohio, with its principal place of business located in Hamilton County, Ohio. *Id.* Kroger (OH) works closely with Kroger (FL) and employed at least two Ohio-based employees to whom Bessen reported during her employment with Kroger (FL). Doc. 14-1, PageID 220–21.

Defendant, Scarlette Bessen, is a former employee of Kroger (FL). *Id.* at PageID 2. At all relevant times, Bessen resided in the state of Idaho and worked remotely from her home. *Id.*; Doc. 15-1, PageID 236, ¶ 3.

### B. Recruitment and First Promotion

In 2018, an employee of Kroger (FL). recruited Bessen to work for the company Doc. 51-1, PageID 236, ¶ 4. Shortly thereafter, Bessen began working for Kroger (FL) as an Account Manager. Doc. 1, PageID 3. Her first manager was a Kroger (FL) employee who resided and worked remotely from Utah. Doc. 15-1, PageID 237, ¶ 8.

In April 2019, Bessen was promoted to an Account Executive position, which involved "daily contact with numerous coworkers located in Cincinnati, including emails, phone calls, and video meetings." Doc. 1, PageID 3. Bessen attended virtual meetings on a weekly basis that were attended by numerous Cincinnati-based co-workers. *Id.* As an Account Executive, Bessen reported to a Kroger (FL) employee who resided and worked remotely from Oregon. Doc. 15-1, PageID 237, ¶ 9.

### C. Promotion to Implementation Manager

In approximately August 2019, Bessen was promoted again to an Implementation Manager role and executed a Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the "Confidentiality Agreement"). Doc. 1, PageID 3. The Confidentiality Agreement contains a Florida choice of law provision. Doc. 1, PageID 25.

As an Implementation Manager, Bessen was responsible for implementing new products and services, and developing and building customer relationships. Doc. 1, PageID 6, ¶ 26. According to Kroger (FL), Bessen used confidential information to communicate with Kroger customers about the systems and processes she was implementing. *Id.*

In her role as an Implementation Manager, Bessen reported to a Cincinnati-based Senior Vice President of Kroger (OH), though she was still an employee of Kroger (FL). Doc. 1, PageID 4, ¶ 18. Bessen continued to attend numerous weekly and monthly virtual meetings with Cincinnati colleagues, including weekly calls with her boss. *Id.*

In June of 2020, Bessen began reporting to Janelle Grubbs, a different Kroger (OH) employee, who worked remotely from her home in Columbus, OH. *Id.* Bessen and Grubbs met via virtual call at least twice per month from February 2021 until Bessen's resignation. *Id.* Bessen continued near daily interactions with Cincinnati-based co-workers. *Id.*

Bessen also began working on the COVID Care Plus project, which allegedly involved "extremely frequent communications with Cincinnati-based coworkers." *Id.* ¶ 19.

### D. Resignation:

Bessen voluntarily resigned from Kroger (FL) effective October 26, 2023. *Id.* at PageID 7 ¶ 31. Shortly before Bessen's resignation, she emailed certain purportedly confidential documents from her Kroger (FL) email account to her personal Gmail account. *Id.* at PageID 33. These documents included customer lists and Kroger work product. *Id.*

### E. Additional Jurisdictional Facts:

Throughout the duration of her employment with Kroger (FL), Bessen reported to human resources employees located in Florida. Doc. 15-1, PageID 237 ¶ 12. Bessen's

paychecks were issued from a Kroger (FL) bank account, located in Florida, and her W-2s were sent from Florida and addressed from Kroger (FL). *Id.*

In addition to her contacts with Ohio co-workers, Bessen regularly communicated with Kroger (FL) employees working remotely from states including Utah, Florida, Washington, Indiana, Minnesota, and Arizona. *Id.* at ¶ 13.

Bessen worked primarily with customers located in California, Arizona, Oregon, Washington, and Utah. *Id.* ¶ 14.

During the course of her employment with Kroger (FL), Bessen traveled throughout the United States. *Id.* at ¶ 12–16. She traveled to Indiana on two occasions to pitch to prospective clients for Kroger (FL). *Id.* at ¶ 15. She traveled to Florida on four occasions to attend training seminars and department meetings. *Id.* at ¶ 16. Bessen traveled to Cincinnati on three occasions prior to 2020 to attend training seminars and Kroger (FL) related meetings. *Id.* at ¶ 17.

## II.  STANDARD OF REVIEW

In the Motion, Bessen asks this Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Bessen. The parties have submitted cross-briefing on the question of jurisdiction (Doc. 14, 15, 16, 17, 18), and the Court has elected to resolve the question on the parties' written submissions without an evidentiary hearing.

When a district court resolves a 12(b)(2) motion solely on the written submissions, the burden on the plaintiff is "relatively slight" and only requires a *prima facie* showing that personal jurisdiction exists. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016). The plaintiff meets this burden by setting forth "specific facts showing that the court

4

has jurisdiction." *Id.* "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

### III. LAW AND ANALYSIS

When subject-matter jurisdiction is based on diversity of citizenship, courts look to the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). A court may only exercise personal jurisdiction over a defendant if doing so would satisfy the requirements of both the state's long-arm statute and constitutional due process. *Id.*

The Sixth Circuit has long recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (citing *Calphalon,* 228 F.3d at 721). However, "in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Thus, the core focus of this Court's analysis is on due process concerns.

#### A. Ohio's Long-Arm Statute

Specific jurisdiction under Ohio law is provided by Ohio's long-arm statute, Ohio Rev. Code § 2307.382, which enumerates nine (9) categories of conduct that subject an entity to personal jurisdiction in Ohio if a cause of action arises out of such conduct. Plaintiffs argue that jurisdiction is appropriate under Ohio Rev. Code §§ 2307.382(A)(1), (4), and (6). The statute states, in pertinent part:

5

>(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>>(1) Transacting any business in this state;
>
>>\* \* \*
>
>>(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
>>\* \* \*
>
>>(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;

### i. Ohio Rev. Code § 2307.382(A)(1)

"As used in the long-arm statute . . . transacting business in this state connotes a broad statement of jurisdiction." *State ex rel. DeWine v. 9150 Grp., L.P.*, 2012-Ohio-3339, ¶ 10, 977 N.E.2d 112, 116–17 (Ohio Ct. App.). It has been interpreted in this Court to be broader than "contract" and include "to carry on business" and "to have dealings". *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 629 (S.D. Ohio 2012). Subsection (A)(1) does not require the defendant to be physically present in the State. *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75–76, 559 N.E.2d 477, 480 (1990) ("The fact that [defendant] maintained no physical presence in Ohio does not preclude a finding that it transacted business in this state.")

"Section (A)(1) has been found to be satisfied when an out-of-state employee regularly communicates or otherwise works with Ohio-based employees." *Dugger v. Honeywell Int'l, Inc.*, No. 1:21-CV-00892, 2021 WL 5961624, \*5 (N.D. Ohio Dec. 16, 2021) (citing *The Rightting, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, \*3–4 (N.D. Ohio Feb. 2, 2009); *Int'l Paper*,

872 F. Supp. 2d at 630–31). For example, in *Dugger*, the district court found that Section (A)(1) conferred jurisdiction on an out-of-state manager who supervised an employee working in Cleveland and who had visited Ohio on at least one occasion. 2021 WL 5961624 at *5.

Similarly, in *International Paper Co.*, the plaintiff made a *prima facie* showing of jurisdiction under Ohio's long-arm statute when (1) the defendant, who worked from California for a New-York based brand, held a position that fell within an Ohio-based division of the company, (2) accepted a promotion within that division, (3) regularly communicated with personnel based on Ohio, (4) reported to an Ohio-based supervisor who was an employee of the Ohio-based division, (5) participated in a project that involved regular communications with Ohio-based employees, (6) physically attended meetings in Ohio on at least two occasions, and (7) maintained access to certain websites managed by the Ohio-based division that contained highly confidential documents. 872 F. Supp at 630–31.

Here, the Court finds that Plaintiffs have made a *prima facie* showing that Bessen transacted business in Ohio within the meaning of Section (A)(1). Though the cases are somewhat distinguishable, many of the facts supporting the exercise of jurisdiction in *International Paper Co.* are present here. 872 F. Supp at 630–31. Specifically, Bessen regularly communicated with personnel based in Ohio, Bessen reported to an Ohio-based supervisor who was an employee of Kroger (OH), Bessen participated in the COVID Care Plus team, which Plaintiffs allege required frequent communication and collaboration with Cincinnati-based employees, and Bessen traveled to Ohio on least three occasions.

7

ii. **Ohio Rev. Code §§ 2307.382(A)(4) and (6)**

Because the Court finds that Ohio's long-arm statute authorizes it to exercise of jurisdiction over Bessen under subsection (A)(1), the Court need not address the parties' jurisdictional arguments asserted under subsections (A)(4) and (6) of § 2307.382.

B. **Constitutional Due Process**

Having found personal jurisdiction over Bessen to exist under Ohio's long-arm statute, the Court next turns to the analysis under the due process clause of the Fourteenth Amendment. At this step, courts evaluate whether the defendant has sufficient minimum contacts with the state so that personal jurisdiction over the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). To make this determination, courts in this Circuit employ the three-prong test articulated in *Southern Machine Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* Applying this test to the facts at hand, this Court finds that the exercise of jurisdiction over Bessen comports with the due process clause.

i. **Purposeful Availment**

A defendant purposefully avails herself of the privilege of acting in the forum state "where the defendant's contacts with the forum state proximately result from actions by the defendant *[herself]* that create a substantial connection with the forum State . . . and where the defendant's conduct and connection with the forum are such that [s]he should reasonably anticipate being haled into court there." *AlixPartners*, 836 F.3d at 550 (citing *Neogen*, 282 F.3d

8

at 889). This requirement ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The requirement is satisfied when a nonresident deliberately engages in "significant activities within a State" or creates "continuing obligations between [herself] and residents of the forum." *Id.*

Here, Plaintiffs allege that Bessen had frequent and regular contact with Ohio-based co-workers, including weekly and bi-monthly virtual meetings with her Ohio-based supervisors over the course of at least four years. Doc. 14, PageID 214–15. Bessen also traveled to Ohio for work on at least three occasions, twice after being promoted to Implementation Manager and signing the Confidentiality Agreement at issue in this lawsuit.

Plaintiffs rely on the holding in *International Paper Co.*, discussed *supra*, in which the district court found that a sufficient showing was made under similar facts. 872 F.Supp. 2d at 631. Bessen correctly identifies several distinguishing differences. Doc. 18, PageID 255–56. Namely, the defendant employee in *International Paper Co.* held a position within the Ohio-based division of the company, whereas the parties here seem to agree that Bessen was an employee of Kroger (FL) despite reporting to an Ohio-based supervisor who worked for Kroger (OH). Additionally, the defendant in *International Paper Co.* accessed a website maintained by the Ohio-based division of the company that contained confidential information pertaining to that division. *Id.* at 632. No such allegation is made here. However, despite these differences, this Court finds that the facts in *International Paper Co.* are at least analogous to the instant case and the holding is therefore instructive.

Bessen points to her extensive contacts with other states to argue that her contacts with Ohio were not "continuous or systematic." Doc. 15, PageID 229. Specifically, Bessen frequently interacted with Kroger (FL) employees all over the United States, previously reported to managers who worked remotely from states other than Ohio, traveled to Florida and other states more frequently than she traveled to Ohio, and had employment duties that involved accounts and clients almost exclusively in western states. *Id.* However, "[t]he proper test for personal jurisdiction is not based on a 'percentage of business' analysis . . . but rather on whether the absolute amount of business conducted by [Bessen] in [Ohio] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen*, 282 F.3d at 891–92 (quoting *Burger King*, 471 U.S. at 475). Under this framework, this Court finds that Plaintiffs have met their burden of setting forth sufficient facts to make a *prima facie* showing of purposeful availment.

        ii.        **Arising From**

The Court next considers whether the instant action arises from Bessen's contacts in Ohio. This second prong of the *Southern Machine* test is a "lenient standard" that does not require that the cause of action *formally* arise from the defendant's contacts. *AlixPartners*, 836 F.3d at 552 (citing *Air Prod.*, 503 F.3d at 551). The standard for this prong has been articulated many ways, for example: "whether the causes of action were made possible by or lie in the wake of the defendant's contacts, or whether the causes of action are related to or connected with the defendant's contacts with the forum state." *Air Prod.*, 503 F.3d at 553 (citations and internal quotation marks omitted). "At a minimum, this factor is satisfied if 'the cause of action, of whatever type, has a substantial connection with the defendant's in-state activities.'" AlixPartners, 836 F.3d at 552 (quoting *Bird*, 289 F.3d at 875).

10

Plaintiffs have met their burden under this lenient standard. Plaintiffs claim that Bessen obtained access to confidential and trade secret information through her employment and that she retained and possibly misappropriated that confidential information in violation of the Confidentiality Agreement, Ohio law, and Florida law. Plaintiffs further allege that Bessen obtained at least some of the confidential information at issue through her work and communications with Ohio-based co-workers and trips to Ohio on multiple occasions. Doc. 14, PageID 216. Therefore, they have made a *prima facie* showing that the causes of action have a substantial connection with the defendant's in-state activities.

### iii. Reasonableness

The third and final prong of the *Southern Machine* test asks whether "the acts of the defendant or consequences caused by the defendant [ ] have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 401 F. 2d at 381. "This requirement exists because 'minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.'" *Air Prod.*, 503 F.3d at 554 (quoting *Burger King,* 471 U.S. at 477–78). Where a defendant's contacts with the forum satisfy the first two prongs of the *Southern Machine* test, "only the unusual case will not meet this third criteria." *Id.* (citing *Theunissen*, 935 F.2d at 1461). In making this determination, courts will consider a number of factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prod.*, 503 F.3d at 554 (citations omitted).

Bessen argues that it is "patently unreasonable" for her to defend this suit in Ohio based on the burden it would impose on her, and the State of Idaho's interest in protecting the interests of its citizens. Doc. 15, PageID 232–33. Bessen asserts she is the caregiver for her blind husband and cannot afford the expense of litigating this dispute two-thousand miles from her home in Idaho. *Id.* Bessen, however, concedes that Plaintiffs are free to seek relief in Florida instead, which has clear nexus to her employment and is significantly farther from her home in Idaho than Ohio. Further, Bessen traveled for work on multiple occasions throughout her employment with Kroger (FL), including two trips to Indiana in 2023, four trips to Florida, and three trips to Ohio. Doc. 15-1, PageID 237. These facts undercut the argument that the burden of traveling is significant enough to transform this into the "unusual case" where the exercise of jurisdiction would be so unreasonable as to overcome the inference of reasonableness that arises when the first two prongs of the *Southern Machine* test are met. *See Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, No. 2:10–cv–734, 2012 WL 169963, *6 (S.D. Ohio Jan. 19, 2012) ("even where it would undoubtedly burden a defendant to defend herself from a foreign state, 'when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.'") (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003)).

Though this Court does not doubt that defending herself in Ohio imposes a significant burden on Bessen, her contacts with the forum state are not so minimal that the burden imposed outweighs the Plaintiffs interests in obtaining relief in Ohio and Ohio's interest in providing a forum for corporations that do business in the state.

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** Bessen's Motion to Dismiss for Lack of Jurisdiction.

**SO ORDERED**

February 16, 2024

Jeffery P. Hopkins
United States District Judge